IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| THE MILL STEEL COMPANY, MILL STEEL BIRMINGHAM, LLC, and MSSES HOLDINGS, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| SOUTHEASTERN STUD & COMPONENT, INC., DIXIELAND METALS OF ALABAMA, L.L.C., J&S INVESTMENTS, L.L.C., K2 ENTERPRISES, L.L.C., MID-SOUTH STEEL LLC, SOUTHEASTERN STUD, LLC, and KENNON W. WHALEY, SR., | ) ) ) ) ) ) ) ) ) | CIVIL ACTION NO. 2:14-cv-01023-WKW-WC |
| Defendants. | ) | |

## THIRD AMENDED COMPLAINT

**COME NOW** the plaintiffs in this action, The Mill Steel Company ("Mill Steel"), Mill Steel Birmingham, LLC ("Mill Steel Birmingham"), and MSSES Holdings, LLC ("MSSES", together with Mill Steel and Mill Steel Birmingham, "Plaintiffs"), and for its Third Amended Complaint (this "Complaint") against Southeastern Stud & Component, Inc. ("SSC")[1], Dixieland Metals of Alabama,

---

[1] As the Court is aware, SSC is currently the debtor in a Chapter 7 bankruptcy proceeding styled *In re Southeastern Stud & Components, Inc.*, Case No. 14-32906, United States Bankruptcy Court for the Middle District of Alabama, Northern Division. Accordingly, the instant litigation is currently stayed as to SSC. Plaintiffs' claims stated herein against SSC are made for informational purposes only, unless and until the automatic stay is lifted.

22902419 v3

L.L.C. ("DMA"), J&S Investments, L.L.C. ("J&S"), K2 Enterprises, L.L.C. ("K2"), Mid-South Steel LLC ("MSS"), Southeastern Stud, LLC ("SES", together with SSC, DMA, J&S, K2 and MSS, "Borrrowers") and Kennon W. Whaley, Sr. ("Guarantor", and together with Borrowers, "Defendants"), hereby states as follows:

## PARTIES

1. Mill Steel is a corporation incorporated under the laws of the state of Michigan with its principal place of business and "nerve center" located in Grand Rapids, Michigan.

2. Mill Steel Birmingham is a limited liability company organized according to the laws of the State of Michigan with its principal place of business and "nerve center" located in Grand Rapids, Michigan. Mill Steel Birmingham is wholly owned by Mill Steel.

3. MSSES is a limited liability company organized according to the laws of the State of Delaware with its "nerve center" located in Grand Rapids, Michigan. MSSES is wholly owned by MS Forming, LLC, which is a Michigan limited liability company.

4. SSC is a corporation incorporated under the laws of the State of Alabama with its principal place of business located in Montgomery, Alabama.

5.     DMA is a limited liability company organized according to the laws of the State of Alabama with its principal place of business located in Montgomery, Alabama.  Upon information and belief Dixieland Metals' sole member, Guarantor, is an adult citizen of the State of Alabama residing in Montgomery County, Alabama.

6.     J&S is a limited liability company organized according to the laws of the State of Alabama with its principal place of business located in Montgomery, Alabama.  Upon information and belief J&S's only two members, Guarantor and Rhonda Y. Whaley, are both adult citizens of the State of Alabama residing in Montgomery County, Alabama.

7.     K2 is a limited liability company organized according to the laws of the State of Alabama with its principal place of business located in Montgomery, Alabama.  Upon information and belief, K2's sole member, Guarantor, is an adult citizen of the State of Alabama residing in Montgomery County, Alabama.

8.     MSS is a limited liability company organized according to the laws of the State of Texas with its principal place of business located in Austin, Texas.  Upon information and belief, MSS's sole member is Guarantor, who is an adult citizen of the State of Alabama residing in Montgomery County, Alabama.

9.     SES is a limited liability company organized according to the laws of the State of Alabama with its principal place of business located in Montgomery,

Alabama. Upon information and belief, SES's sole member, Guarantor, is an adult citizen of the State of Alabama residing in Montgomery County, Alabama.

10. Guarantor is an adult citizen of the State of Alabama residing in Montgomery County, Alabama.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because (a) Plaintiffs are citizens of the State of Michigan and the Defendants are citizens of the State of Alabama, and (b) the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

12. The Defendants are subject to personal jurisdiction in this judicial district because, *inter alia*, they are domiciled in the State of Alabama.

13. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because, *inter alia*, the Defendants in this matter either reside or maintain their principal place of business in this judicial district.

## NATURE OF ACTION

On October 23, 2013, Plaintiffs and Defendants memorialized an existing business relationship for the sale of certain goods from Plaintiffs to Defendants on credit and/or on an open account basis. As security for Plaintiffs providing goods on a credit basis, Plaintiffs and Defendants entered into various agreements, as stated in greater detail below, securing Defendants' payments for the use and

storage of Plaintiffs' goods. Defendants are currently in default under the agreements for, *inter alia,* failure to make payments when due under the agreements and failure to properly apprise Plaintiffs regarding amounts of goods used by Defendants, constituting a material misrepresentation under the Agreements, as defined herein. Therefore, Plaintiffs have filed this complaint to enforce their rights and remedies under the Agreements executed in connection with their business relationship with Defendants. Plaintiffs seek the entry of a monetary judgment against Defendants for the past due amounts, as well as court-ordered access to the Collateral.

## FACTS

**Supply Agreement/Credit Agreement**

14. On October 28, 2013, Plaintiffs and SSC, DMA and K2 (SES, DMA and K2 are collectively referred to hereinafter as the "Whaley Companies") entered into that certain Supply Agreement (the "Supply Agreement") which provided for Plaintiffs to supply flat-rolled carbon steel of the gauges and grades used by the Whaley Companies in the ordinary course of their business (referred to herein as the "Products") pursuant to the terms and provisions of the Supply Agreement.

15. The Supply Agreement provides the terms and conditions pursuant to which the Whaley Companies agreed to, *inter alia*, hold (as bailee) and purchase Products. The Supply Agreement contemplates that the Whaley Companies may

request Products from Plaintiffs to be held at their own facilities (once held by the Whaley Companies in their facility(ies), Product becomes "Bailment Product"), which may be pulled for processing into a final product ("End Product"). When pulled for processing, the applicable Whaley Company must notify Mill Steel of this usage in its subsequent Weekly Utilization Report (as defined in the Supply Agreement). Upon receipt of this Weekly Utilization Report, an invoice will be issued to the applicable Whaley Company for the amount of Bailment Product processed in the previous week, which invoice is to be paid within forty-five (45) days of the date of such invoice. Alternatively, in the event Bailment Product remains unprocessed and unidentified in a Weekly Utilization Report during the period of forty-five (45) days from the date such Bailment Product was received, then Mill Steel, pursuant to the terms of the Supply Agreement, is to send the applicable Whaley Company an invoice for this portion of the Bailment Product. The entire balance of any such invoice must also be paid in full within forty-five (45) days of its issuance.

16. The Supply Agreement also provides, *inter alia*, that the "Whaley Companies must keep a detailed and real time inventory report of all Bailment Product (the 'Inventory Report')…[which must reflect Product which remains as Bailment Product and Product which has been pulled by the Whaley Companies to

be utilized for processing end-product." *See id*, p. 2.  This Inventory Report is due from the applicable Whaley Company upon demand therefor made by Mill Steel.

17.   The Whaley Companies' compliance with the Weekly Utilization Report and Inventory Report (collectively, the "Reports") requirements is, of course, of utmost importance to Plaintiffs, as the existence of accurate Reports enables Plaintiffs to (i) keep track of its Products, (ii) determine the appropriate amount to bill the Whaley Companies, and (iii) determine whether or not to deliver additional Products.

18.   In connection with the Supply Agreement, Defendants requested the establishment of a credit facility from Plaintiffs for the purpose of financing purchases under the Supply Agreement.  On October 28, 2013, Plaintiffs and Defendants entered into that certain Credit and Security Agreement dated October 28, 2013 (the "Credit Agreement", together with the Supply Agreement, the "Agreements"), whereby Plaintiffs agreed to establish a revolving credit facility (the "Credit Facility") in the amount of no more than $1,500,000.00, which would allow the Whaley Companies to finance purchases under the Supply Agreement.

19.   In addition to other terms related to payment, the Credit Agreement provides:

> [a]t any time an outstanding balance exists under the Credit Facility, and Debtors receive payment from third parties in connection with the sale of any Product financed under this Agreement, Debtors shall within five (5) Business Days remit the financed amount related to

such Product to Mill Steel as a payment under the Credit Facility together with a reasonable accounting of the same.

20. Defendants' obligations under the Credit Agreement are secured by all of Defendants' assets, including but not limited to all of Defendants':

Inventory and Receivables, whether now owned by or owing to, or hereafter acquired by or arising in favor of, Debtor and whether owned or consigned by or to, or leased from or to, Debtor and regardless of where located; all proceeds of the foregoing; all equipment, all General Intangibles, including without limitation copyrights, patents, trademarks, trade secrets, proprietary systems and data and other intellectual property (including, without limitation, all Scheduled Intellectual Property), all Deposit Accounts with any bank or other financial institution; all Fixtures, and all accessions to, substitutions for and replacements, proceeds, insurance proceeds and products of the foregoing, together with all books and records, customer lists, credit files, computer files, programs, printouts and other computer materials and records related thereto, and any other collateral for the Obligations pursuant to the Credit Documents at any time by and Debtor or Guarantors.

21. Additionally, Defendants' obligations of payment and performance under the Credit Agreement are secured by (i) that certain Stock Pledge Agreement (the "Stock Pledge Agreement") between Guarantor and Mill Steel dated October 28, 2013 (pledging all of Guarantor's shares in SSC (100%)), (ii) that certain Pledge of Membership Interests (the "Guarantor Pledge of Membership Interests") between Guarantor and Mill Steel dated October 28, 2013 pledging Guarantor's membership interests in DMA (100%), K2 (100%), J&S (50%), MSS (100%), SES (100%) and KRIP, LLC (50%)), (iii) that certain Pledge of Membership Interests (the "K2 Pledge of Membership Interests", together with the Stock Pledge

Agreement and the Guarantor Pledge of Membership Interests, the "Pledge Agreements") between K2 and Mill Steel dated October 28, 2013 (pledging all of K2's membership interests in Eco-Green Coatings, LLC (50%)), and (iv) that certain Deposit Account Control Agreement dated February 10, 2011 by and between Mill Steel, SSC, and Sterling Bank of Montgomery.  The collateral made the subject of the Pledge Agreements, together with the collateral identified in immediately preceding paragraph of this Complaint, are collectively hereinafter referred to as the "Collateral."

22. As set forth in paragraph 9(f) of the Stock Pledge Agreement, Guarantor warranted and represented that he owned 100% of the stock in SSC on October 28, 2013, in order to induce Plaintiffs to enter into the Credit Agreement.

23. Upon information and belief, Guarantor knew (but did not disclose) at the time he executed the Stock Pledge Agreement that another individual held a claim to at least 3% ownership in the stock of SSC.

24. Plaintiffs' security interests in the Collateral are further evidenced by various UCC-1 Financing Statements filed by Plaintiffs with the Alabama Secretary of State (the "Alabama Financing Statements"), as well as a UCC-1 Financing Statement filed by Plaintiffs with the Texas Secretary of State (the "Texas Financing Statement", together with the Alabama Financing Statements, the "Financing Statements").

25. As a further inducement to enter into the Credit Agreement, Guarantor executed that certain Guaranty Agreement dated October 23, 2013 in favor of Mill Steel (the "Guaranty", together with the Agreements, Pledge Agreements, Financing Agreements and any other documents which evidence and/or secure the Agreements, the "Loan Documents"), whereby Guarantor unconditionally guaranteed the obligations of payment and performance set forth in the Credit Agreement.

26. On October 20, 2014, Mill Steel and Mill Steel Birmingham assigned their rights and interests in the Loan Documents to MSSES pursuant to that certain Assignment of Creditor Documents dated October 20, 2014.

**<u>Defaults and Notice Thereof/Remedies</u>**

27. Defendants are in default of the Agreement and have been continually since August 2014.

28. Defendants have failed to make the required payments due under the Agreements. Moreover, the debt owed to Plaintiffs is in excess of the credit cap set forth in the Agreements. Additionally, the Defendants have failed to properly report the amount of Products used by the Defendants at their plants and have materially misrepresented the amounts being used in order to attempt to avoid paying the Plaintiffs for all the products used in the Defendants' business. Additionally, Defendants have failed to timely forward payments to Mill Steel

from customers in connection with the sale of any product financed under the Credit Agreement, along with a reasonable accounting of same, among other events of default under the Agreements. Mill Steel and Mill Steel Birmingham conducted an audit of Defendants' inventory, including an audit of all Plaintiffs' Products currently being housed on Defendants' premises, and discovered that numerous items of Product are either: (i) unaccounted for and missing or (ii) used by the Defendants without properly documentation, authorization or notification of such use to Plaintiffs.

29. The foregoing failures and deficiencies are "Events of Default" as stated in the Agreements. Accordingly, Plaintiffs are entitled to exercise any and all of their rights and remedies against Defendants available under the Agreements and applicable law. The Credit Agreement provides that, in the event of a default, Plaintiffs shall have the right to, *inter alia*, without notice, enter the premises of Defendants where any Collateral is located (through self-help and without judicial process) to collect its Collateral and/or seek the appointment of a receiver or keeper to take possession of the Collateral and to enforce any of Plaintiffs' rights and remedies under the Agreements.

30. On August 12, 2014, counsel for Plaintiffs sent Defendants a letter (the "Notice of Default") whereby Plaintiffs notified Defendants of the aforementioned events of default, among others (the "Events of Default").

31. Despite receipt of the Notice of Default, the Events of Default are continuing and have not been cured by Defendants.

32. As of October 2, 2014, Defendants are liable to Plaintiffs under the Agreements both for the amount of $1,832,193.27, plus existing and accruing attorneys' fees and expenses, and interest for the SSC debt (the "SSC Debt") and for $162,313.32, plus existing and accruing attorneys' fees and expenses, and interest for the DMA debt (the "DMA Debt").

## COUNT ONE
## BREACH OF CONTRACT

33. Plaintiffs adopt, reallege, and incorporate the previous paragraphs as if fully set forth herein.

34. Plaintiffs have complied with their contractual obligations by, among other things, providing Products to the Defendants on credit pursuant to the terms of the Agreements.

35. Defendants have materially breached the terms of the Agreements by, among other things, failing to make payment when due and making materially false misrepresentations to Plaintiffs regarding the amount of Products used by Defendants.

36. Defendants have been provided notice of the breach pursuant to the Notice of Default.

37. Despite receiving the Notice of Default, Defendants have failed and/or refused to pay Plaintiffs all the amounts owed.

38. Accordingly, Defendants are liable to Plaintiffs for any and all outstanding indebtedness under the Agreements, plus attorneys' fees, costs, and accruing interest.

**WHEREFORE,** Plaintiffs respectfully request that this Court enter judgment in favor of Plaintiffs and against applicable Defendants, jointly and severally where possible, for any and all indebtedness owed by Defendants to Plaintiffs under the Agreements, including both the DMA Debt and the SSC Debt, plus existing and post-judgment interest, applicable charges, attorneys' fees and costs, and for such other, further, and different relief as this Court deems just and proper under the circumstances.

## COUNT TWO
## UNJUST ENRICHMENT

39. Plaintiffs adopt, re-allege, and incorporate the previous paragraphs as if fully set forth herein.

40. Plaintiffs conferred a benefit on Defendants by providing Products to the Whaley Companies on a credit basis.

41. Defendants have refused to pay the outstanding amounts owed under the Agreements.

42. By retaining the provided Products, while not remitting payment to Plaintiffs or correctly accounting for the amount of Products used, Defendants have been unjustly enriched at Plaintiffs' expense.

43. Accordingly, Defendants are liable to Plaintiffs for all the outstanding indebtedness pursuant to the Agreement Documents, plus attorneys' fees, costs, and accruing interest.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in favor of Plaintiffs and against applicable Defendants, jointly and severally where possible, for any and all indebtedness owed by Defendants to Plaintiffs under the Agreements, including both the DMA Debt and the SSC Debt, and for such other, further, and different relief as this Court deems just and proper under the circumstances.

## COUNT THREE
## WRIT OF SEIZURE / DETINUE

44. Plaintiffs adopt and incorporate all preceding paragraphs as if fully set forth herein.

45. Defendants are in default of their obligations under the Agreements. This ongoing default entitles Plaintiffs to immediate possession of their Products located on Defendants' premises.

46. Defendants are wrongfully withholding possession of the Products from Plaintiffs, despite Defendants' knowledge that Plaintiffs are entitled to the immediate possession of the Products.

47. Pursuant to the Agreements and ALA. CODE § 6-6-250, *et seq*., Plaintiff is entitled to immediate possession of the Products.

**WHEREFORE**, Plaintiffs demand judgment against Defendants for immediate possession of the Products, and for such other, further and different relief as this Court deems just and proper.

### COUNT FOUR
### FRAUD IN THE INDUCEMENT/FRAUDULENT MISREPRESENTATION/NEGLIGENT MISREPRESENTATION (GUARANTOR)

48. Plaintiffs adopt, reallege, and incorporate the previous paragraphs as if fully set forth herein.

49. An individual has claimed a 3% ownership in the SSC stock.

50. Guarantor has not refuted this assertion.

51. The stock is uncertificated, and the ownership of the stock cannot be easily verified.

52. On its face, it appears 3% of the SSC stock was transferred, and Guarantor is not, in fact, the 100% owner of the SSC stock.

53. Guarantor falsely represented to Plaintiffs in the Stock Pledge Agreement that he owned 100% of the SSC stock as of October 28, 2013.

54. At the time Guarantor executed the Stock Pledge Agreement, Guarantor was aware that he did not own 100% of the SSC stock.

55. Guarantor made this fraudulent and/or negligent representation that he owned 100% of the SSC stock as of October 28, 2013 in the Stock Pledge Agreement with the intent to induce Plaintiffs to enter into the Credit Agreement. This fraudulent and/or negligent representation concerns a material fact.

56. Guarantor had a duty to disclose to Plaintiffs that he did not own 100% of the SSC stock as of October 28, 2013.

57. Plaintiffs relied on this fraudulent and/or negligent representation made by Guarantor and was injured as a proximate result.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in favor of Plaintiffs and against applicable Defendants, jointly and severally where possible, for any and all indebtedness owed by Defendants to Plaintiffs under the Agreements, including both the DMA Debt and the SSC Debt, and for such other, further, and different relief as this Court deems just and proper under the circumstances.

## COUNT FIVE
## CONVERSION

58. Plaintiffs adopt and incorporate the allegations set forth in the preceding paragraphs as if fully set forth herein.

59. Defendants above-described misappropriation of Plaintiffs' Products constitutes a wrongful taking, detention, interference, and/or use of Plaintiffs' property.

60. Defendants misappropriation of Plaintiffs' Products was committed in known violation of the law and of Plaintiffs' rights under the Credit Documents.

61. Plaintiffs have suffered and will continue to suffer damages as a result of Defendants' wrongdoing.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter a judgment in its favor and against Defendants and award all available relief under Alabama law, including the equitable relief requested above, and all available actual damages, punitive damages, costs, expenses, fees, and other relief the Court deems appropriate.

## COUNT SIX
## RECEIVERSHIP

62. Plaintiffs reallege and reincorporate all preceding paragraphs of this Complaint as if set forth fully herein.

63. Under the terms of the Credit Documents, and in light of above-described Defaults, Plaintiffs are contractually entitled to the appointment of a receiver to take possession of the Collateral in order to preserve and enhance its value. Absent a receiver, Plaintiffs face a threat that the Collateral will continue to be removed, lost, misplaced, or commingled with other inventory due to

Defendants inability or unwillingness to properly fulfill its obligations under the Credit Documents.

64.  Plaintiffs, or the court appointed receiver, will provide a good and sufficient bond, if so required by this Court, in such sum as this Court deems proper, for the payment of any costs, expenses, or damages that may be incurred by the appointment of a receiver.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs request this Court to enter an order appointing a receiver to take control of and manage any and all of the Collateral of the Plaintiffs.

Dated this the 1st day of June, 2015.

/s/ Derek F. Meek
S. Greg Burge
Michael L. Hall
Derek F. Meek
Ryan D. Thompson

Attorneys for Plaintiffs

**OF COUNSEL:**

Burr & Forman LLP
420 North 20th Street, Suite 3400
Birmingham, Alabama 32503
Phone: (205) 251-3000
Fax: (205) 458-5100
dmeek@burr.com
gburge@burr.com
rthompso@burr.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that I have served a copy of the foregoing document by Notice of Electronic Filing, or, if the party served does not participate in Notice of Electronic Filing, by U.S. First Class Mail or email on this the 1st day of June, 2015:

| | |
|---|---|
| Jamie Alisa Wilson<br>Benton & Centeno, LLP<br>2019 Third Avenue North<br>Birmingham, AL 35203<br>jwilson@bcattys.com<br>Counsel for Southeastern Stud &<br>Component, Inc. | Von G. Memory<br>Memory & Day<br>P.O. Box 4054<br>Montgomery, AL 36103-4054<br>vgm@memorylegal.com |

Richard H. Gill
Copeland, Franco, Screws & Gill, P.A.
P. O. Box 347
Montgomery, AL 36101-0347
gill@copelandfranco.com

                                      /s/ Derek F. Meek
                                      OF COUNSEL